200 So. 575

## MARTIN v. STATE.

### 3 Div. 836.

Court of Appeals of Alabama.

Feb. 18, 1941.

I. E. Cohen and Albert L. Roemer, both of Montgomery, for appellant.

Thos. S. Lawson, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

RICE, Judge.

One C. B. Harris, who stated that he lived at "Jackson, Rout 1 Box 9," said he came to Montgomery and stayed several days. On a certain Thursday night, he said, he, though not an Elk, went to the "Cave," at the Elks Club building, in the City of Montgomery, to gamble. He says he won $40 at this Elks Club "Cave"— going there with $140, and leaving with $180.

Harris further testified that he went from this "Cave" at the Elks Club to "Tom Temple's Place" at 23½ Dexter Avenue, in the City of Montgomery; that one Frank Amason went with him from the "Cave," above, to Tom Temple's Place —referred to · by at least one witness, as quoted by His Honor, the learned trial judge, as a "gambling joint."

Harris further testified that Frank Amason borrowed $6 from him, and proceeded to gamble at Tom Temple's Place. But that he, Harris, bought a half pint (of whiskey) at Tom Temple's Place, took a drink, and went to sleep. Further, that he got to Tom Temple's Place at about 3:00 o'clock in the morning, and remained until about "day break." And that he slept ten or fifteen minutes—though he couldn't say just how long he slept.

He further testified that while he was asleep somebody took his purse, containing seventeen ten-dollar bills. · He says that appellant was there at Tom Temple's Place when he went to sleep.

Harris further says that when he woke and missed his money he reported it, and "they" (we presume the management of Tom Temple's Place) "called the law."

The police officers apprehended appellant the next night, or the next but one, and accused him of the theft of the money testified to have been taken from Harris. They say he—without any threats, offers of reward, or other inducement—told them "he didn't get the money, but another man did, and gave him a part of it." And that he went to a ·closet in the bedroom where he was staying—on Randolph Street, at Bertha Conner's house—got $50 and gave it to the officers.

We believe what we have set out hereinabove will make clear what we shall say hereafter.

Appellant was put on trial under an indictment in two counts; the first charging him with the offense of grand larceny, and the second with "buying, receiving, concealing, or aiding in concealing seventeen ten-dollar bills of the lawful paper currency of the United States of America, of the value of one hundred seventy dollars, the personal property of C. B. Harris, knowing it was stolen and not having the intent to restore it to the owner."

He was convicted under the *second* count of the indictment, duly adjudged guilty, and sentenced to serve imprisonment in the State penitentiary for the term of two years.

We are of the opinion, and hold, that the testimony was sufficient to support the verdict of the jury; and that, hence, appellant's motion to set aside said verdict was properly overruled.

The objection to the question propounded by the Solicitor to State's witness ' Chisholm, one of the police officers of the City of Montgomery: "Bertha Conner

is a whore, isn't she?" did not come until after the witness had answered: "Yes, sir, she is a whore," and was hence too late to be availing.

 At the time testimony of appellant's "confession" was admitted into the evidence, it was properly done. If later developments rendered same inadmissible, the matter, it seems, and we hold, could only be here presented for review by a motion to exclude same. No such motion was made, below—though we do not mean to be understood as saying that such a motion, under the circumstances here, should have been granted had it been made.

We have "searched the record for error," but find none—certainly none prejudicial to appellant.

And the judgment of conviction is affirmed.

Affirmed.